IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FELIPE QUEZADA,**

      **Plaintiff,**

vs.                                                                                          No.  04cv0257 DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

### MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Quezada's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 11]**, filed August 19, 2004, and fully briefed on November 2, 2004. On October 1, 2003, the Commissioner of Social Security issued a final decision denying Quezada's application for disability insurance benefits and supplemental security income benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Quezada, now thirty-four years old (D.O.B. 02/05/1970), filed his application for disability insurance benefits and supplemental security income on May 13, 2002 (Tr. 14), alleging disability since December 26, 2000, due to back pain.  Quezada has a seventh grade education and past relevant work as a gas station manager.  Tr. 18.  On January 24, 2003, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Quezada's "mild degenerative disc

disease at L4-L5 and L5-S1 [was] a severe medically-determinable impairment," but did not meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. Tr. 19.  The ALJ further found Quezada retained "the residual functional capacity (RFC) for sedentary exertional level work." *Id.*  As to his credibility, the ALJ found Quezada's "allegations regarding his limitations [were] not well supported by the medical record as a whole and [were] not fully credible." *Id.*  Quezada filed a Request for Review of the decision by the Appeals Council.  On January 28, 2004, the Appeals Council denied Quezada's request for review of the ALJ's decision.  Tr. 5.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Quezada seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Quezada makes the following arguments: (1) the ALJ erred in obtaining a consultative examination from Dr. Toner and thus Dr. Toner's evaluation should be stricken; and (2) the ALJ erred in conclusively relying on the Medical-Vocational Guidelines (the grids) to determine he was not disabled.

**A.  Medical Records**

On **November 29, 2001**, Quezada had x-rays of the lumbar spine at Presbyterian Family Healthcare in Belen.  Tr. 113.  The x-rays indicated "negative lumbar spine."  *Id.*

On **January 31, 2001**, Quezada had an MRI of the lumbar spine at Radiology Associates of Albuquerque.  Tr. 114.  The MRI results indicates as follows:

> L4-5:   Small central herniated disc with minimal canal stenosis.
> L5-S1:  Small central herniated disc without canal stenosis or neural foraminal stenosis.
>
> IMPRESSION:
> 1. Small herniated disc centrally at L4-5 and L5-S1.
> 2. Minimal central canal narrowing at level of L4-5.

*Id.*

On **January 21, 2002**, James A. Santos, M.D., a physiatrist (a specialist in physical medicine and rehabilitation) and a spine specialist, with New Mexico Spine evaluated Quezada at Dr. Gamez' request.  Tr. 139-140.  Dr. Santos performed a physical examination, finding:

> GENERAL:  This is a mildly overweight young male who is in no acute distress.  His movements are moderately guarded and stiff, and he shows some moderate pain behaviors.
>
> GAIT:  Normal gait pattern.  Patient is able to heel and toe walk without difficulty.
>
> POSTURE:  Normal thoracic kyphosis and lumbar lordosis.  No evidence of truncal list.

BACK: Normal lumbar lordosis. No obvious deformities. The patient is tender to palpation over L4 and L5 spinous processes. No trigger points identified. Active range of motion in his low back is moderately restricted in all 6 planes with reproduction of his usual pain with forward flexion and left lateral bending.

SACROILIAC JOINT: No pelvic obliquity. Nontender over bony landmarks or sacroiliac joint. FABER's test negative. No asymmetry with standing forward flexion test. Negative sacral posterior anterior thrust.

HIP JOINTS: No obvious deformities, edema or erythema. Nontender over greater trochanters. Full painless and unrestricted range of motion.

EXTREMITIES: No leg discrepancies noted. Pulses intact distally.

ABDOMEN: Soft, nontender and nondistended. No pulsatile masses palpated.

MUSCLES: No asymmetry or fasciculations. Strength is 5/5 in all muscle groups tested of the lower extremities. Normal tone throughout.

SENSATION: Intact to light touch throughout.

REFLEXES: Deep tendon reflexes 2+/4 in the upper and lower extremities. Babinski's negative. No clonus noted.

DURAL TENSION SIGNS: Negative straight leg raise in the sitting and supine positions. Negative slump test.

FLEXIBILITY: There is severe inflexibility of the bilateral hamstrings, bilateral tensor fascia lata, and bilateral quadriceps. Positive Ober's sign bilaterally.

IMAGING: The patient has provided lumbar spine films taken at an outside clinic. These show mild degenerative narrowing at L4-5 and L5-S1 which do not cause any significant stenosis.

IMPRESSION:
1. Chronic low back pain, likely discogenic in origin.
2. Inflexibility and deconditioning.

PLAN: At this time, I feel the patient has not optimized his physical therapy program. He will be referred back to physical in order to regain the range of motion in his low back and to progress into a back stabilization program. I will ask them to focus on stretching of his hamstrings, quadriceps and hip abductors for improved lumbopelvic control. I will also ask him to continue Vioxx 25 mg daily, and will prescribe him Lortab 7.5 mg to take 1 every 6 hours as needed for severe breakthrough pain. We will attempt this conservative intervention over the next 6 weeks. If his symptoms do not significantly improve or they worsen, I will likely refer him to one of our spine surgeons for an evaluation.

Tr. 140-141.

On **January 31, 2002**, Dr. Santos submitted a "Non-formulary/Prior Authorization Request Form" to Presbyterian Health Plan. Tr. 134. Dr. Santos requested Vioxx for Quezada for the treatment of his low back pain. Dr. Santos noted Quezada was "responding well" to the Vioxx which Quezada was taking one daily.

On **March 8, 2002**, Dr. Santos evaluated Quezada. Tr. 143. Dr. Santos noted he had seen Quezada at the clinic on January 21, 2002 with "complaints of low back pain over the last 7 years secondary to a work related injury." *Id.* Dr. Santos noted that at that time he reviewed an MRI report which indicated "two small central disc herniations at L4-5 and L5-S1 with no significant stenosis." *Id.* Dr. Santos also noted that at that time he found Quezada "to be neurologically intact," referred him to a physical therapy program, started him on Vioxx and provided Quezada with Lortab for pain control." *Id.*

Quezada complained to Dr. Santos that his symptoms were "essentially unchanged." Dr. Santos assessed Quezada as having "chronic low back pain, likely discogenic" and "degenerative disc disease l4-5 and L5-S1. Dr. Santos referred Quezada to a spine surgeon at New Mexico Spine so that Quezada could be evaluated for "either an IDET procedure versus surgery." *Id.* Dr. Santos advised Quezada to continue taking his medications as prescribed.

On **March 13, 2002,** Dr. Claude D. Gelinas, a Board Certified Orthopedic Spine Surgeon with New Mexico Spine, evaluated Quezada at Dr. Santos' request. Tr. 135-136. Quezada reported his back pain was worse with bending and twisting activities and denied any significant radiating pain down his legs. Quezada also reported that as long as he "stays at rest, he tends to do relatively well." Tr. 135. Dr. Gelinas performed a physical examination and found as follows:

> PHYSICAL EXAMINATION: On physical examination, he stands 5'5", weights 195 pounds. He stands erect, walks with a near normal gait pattern. Range of motion of his back is limited to 40 degrees of forward flexion, 20 degrees of extension with minimal pain at the extremes. He has some minimal spasm present. He has pain with straight leg raise, with grossly normal sensory examination. No focal motor weakness. No evidence of clonus or Babinski. His pulses are present.
>
> RADIOGRAPHIC EXAMINATION: I reviewed the patient's MRI scan, which shows significant degenerative narrowing, with broad-based disc bulges and stenosis at 4-5 and 5-1. Remainder of his disc spaces appear to be well hydrated and intact.
>
> IMPRESSION: My impression is degenerative disc disease from stenosis.
>
> DISCUSSION: At this point in time, since the patient has had symptoms going on for a long period of time, his only option is to consider a two-level fusion operation, which is a very large operation. It takes three to six month to recovery from this. At this point in time, his symptoms are severe enough to justify this. **My recommendation is that he should be limited to a light to medium level work capacity at the most.** If his symptoms should get to the point that he feels that surgery is an option for him, he will call me. Otherwise, he will continue to take his medication and do his exercises on a regular basis.

Tr. 135-136.

On **July 25, 2002**, Dr. Eugene Toner, an agency consultant, evaluated Quezada. Tr. 123-130. Quezada reported he was taking Vioxx 25 mg once a day as prescribed by Dr. Gelinas and was not sure he wanted to undergo a surgical procedure. Quezada reported he had constant back pain with no radiation to his legs. Quezada claimed he could "stand for 45 minutes, sit for an hour, drive for half an hour, and walk for an hour." Tr. 123. Quezada also reported he had to lie down "up to 10 times a day for various periods of time and [could] lift only 10 pound." *Id.*

Dr. Toner performed a physical examination, finding, in part:

Cervical rotation 45 degrees right and 60 degrees lift, lateral flexion 30 degrees right and left with full forward flexion and extension. Thoracic rotation is full. Lumbar flexion is 45 degrees while standing. He can sit up with his legs extended to 90 degrees. Extension is 15 degrees, and lateral flexion is 30 degrees right and left. He has positive straight leg raising test while supine of 30 degrees and negative while sitting. Shoulders will elevate 90 degrees; otherwise, full range of motion is noted. Elbows have full range of motion. Wrists how 20 degrees of extension and 30 of flexion with full ulnar and radial deviation and hands have good grip, pinch, and oppositional strength. Hips will flex full right and 90 degrees left,

>extend 15 degrees, fully abduct and adduct, internally rotate 0 right and 90 degrees left, extend 15 degrees, fully abduct and adduct, internally rotate 0 degrees and externally rotate fully bilaterally. Knees have full flexion and extension. There is no laxity or effusion noted to either knee. Ankles have full range of motion.
>
>Cranial nerves II-XII are intact. There is no evidence of any sensory loss to the upper and lower extremities. He gives good strength to his shoulder girdles, but weakness to his right flexors of his great toe and quadriceps and hamstrings at about 2/5. There is no weakness to his left lower extremity. Deep tendon reflexes are 1+ and equal. There is no evidence of any deformities and no evidence of any atrophy to the upper and lower extremities. The claimant does complain of pain to light touch of the lower back but no to axial compression of the spine.
>
>ASSESSMENT:
>   1. Evidence of herniated disc without spinal stenosis at L4-L5 and L5-S1.
>   2. Mild symptom magnification.
>
>REMARKS: This is a fairly young muscular male with an abnormal MRI scan but without any evidence of any radicular findings or complaints. I do feel that his herniated discs should keep him from lifting more than 30 pounds on an occasional basis and 25 pounds frequently. I otherwise would not restrict his standing, sitting, or walking or use of his upper extremities based on these findings.

Tr. 124-125 (emphasis added). Dr. Toner also completed a ROM form (Tr. 128) and a Medical Source Statement of Ability to do Work-Related Activities (Tr.129-130). In the Medical Source Statement of Ability to do Work-Related Activities, Dr. Toner opined Quezada could occasionally lift 30 pounds and frequently lift 25 pounds. Tr. 129. However, Dr. Toner found no limitations in Quezada's ability to stand/walk, sit, or reach. Tr. 130. Dr. Toner also opined Quezada had no problem with fine manipulation with his hands or fingers. *Id.*

On **April 30, 2003**, Dr. David A. Woog, a physician with the New Mexico Pain & Spine Center, evaluated Quezada. Tr.163-165. Quezada reported he had experienced severe low back pain for seven years. Quezada described the pain as stabbing and cramping and rated it at an average of 5 on a 10 point scale. Quezada complained of numbness in both of his legs and

8

weakness from his waist down to his feet. Quezada also reported trying different medications without any relief. Quezada listed Neurontin 100 mg three times a day, methocarbamol four times a day, Ibuprofen, hydrocodone and Vioxx. On this day, Quezada reported his current medication was Acetaminophen, as needed for his pain. Dr. Woog performed a physical examination, noting:

> Current vital signs are stable. Pulse 68. Room air saturation 96%. Blood pressure 120/82. Height 5 feet 6 inches. Weight 200 pounds. He walks with a severely antalgic gait favoring his right side. He can heel and toe walk, however, walking on his heels exacerbates his back and radicular pain. He has forward flexion possible to about 40 degrees without pain but can complete the arc of range of motion to 90 degrees with some back and lower extremity pain resulting. Rearward extension is possible to 10 degrees with an increase in back pain. Both left lateral extension and left lateral rotation provoke an increase in pain greater than that provoked in the opposite direction. Straight leg raise is positive at about 45 degrees on the right and negative on the left. Patrick's maneuver is negative bilaterally. Muscle strength is rated at 5 out of 5 in all muscle groups examined in both lower extremities. There are no changes in capillary refill, tenderness, discoloration, swelling or dystrophic changes noted. Deep tendon reflexes are present, symmetrical and equal rated at 2+ in both bicipital, patellar and Achilles tendon.

Tr. 164. Dr. Woog also noted Quezada's previous imaging studies. On November 29, 2001, Quezada had a negative lumbar spine and a normal CT scan. A December 31, 2002, MRI showed Quezada had a "small herniated disk centrally at L4-5 and L5-S1" and "minimal central canal narrowing at the level of L4-5." *Id.* Dr. Woog also cited to Dr. Claude Gelinas' office notes. On March 13, 2002, Dr. Gelinas had noted, "I have reviewed the patient's MRI scan which shows significant degenerative narrowing with broad based disk bulges and stenosis at 4-5 and 5-1. The remainder of his disk spaces appear to be well hydrated and intact."

Dr. Woog's assessment was that "Quezada's back and lower extremity pain [were] the result of the significant degenerative narrowing and broad based disk bulges and stenosis at L4-5 and 5-1." *Id.* Dr. Woog prescribed Voltaren (nonsteroidal anti-inflammatory medication) 50 mg

twice a day and referred him for physical therapy.  Dr. Woog also suggested an interlaminar epidural steroid injection at the L4-5 level.

On **May 9, 2003**, Dr. Woog administered the interlaminar epidural steroid injection.  Tr. 160-161.  Quezada tolerated the procedure well.

On **September 10, 2003**, Dr. Woog, in response to Quezada's counsel's letter, responded:

> Mr. Quezada has been a patient of mine since April 2003.  His diagnosis is a herniated disc at the L4-5 levels, spinal canal narrowing at the L4-5 level, and lumbar zygapophyseal joint arthropathy.  My assessment and plan for Mr. Quezada is to down regulate his <u>back discomfort</u> through medication management, physical therapy, and up to date diagnostic and therapeutic treatments.

Tr. 186.

## B.  Dr. Toner's Consultative Evaluation

Citing to 20 C.F.R. §416.917 and *Carter v. Secretary of Health and Human Servs.*, 1994 WL 561251 (S.D. Ohio 1994)(unpublished opinion), Quezada contends the Court should strike Dr. Toner's consultative evaluation.  Section 416.917 addresses when the agency will obtain a consultative evaluation.[1]  The case cited by Quezada is distinguishable from this case and does not address the issue before the Court.  Quezada also argues "there is a sharp contrast between Dr. Toner's findings and conclusion and those of the treating doctors"and thus it should be stricken.  Pl.'s Mem. Br. at 5.

---

[1] Section 416.917 states, in pertinent part:

If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examination or tests. 20 C.F.R. § 416.917

Dr. Toner opined Quezada could occasionally lift **30 pounds** and frequently lift **25 pounds** and found no other limitations. A review of the record does not show that any of Quezada's treating physicians, other than Dr. Gelinas, noted any limitations. Dr. Gelinas is a Board Certified Orthopedic Spine surgeon and, as Quezada correctly points out, one of his treating physicians. Pl.'s Mem. Br. at 4 (listing treating physicians). Additionally, Dr. Gelinas and Dr. Santos, a physiatrist specializing in spine problems and also one of Quezada's treating physicians, practices at the same office. Thus, Dr. Gelinas was aware of Dr. Santos' evaluation, findings, and recommendations.

Approximately four months prior to Dr. Toner's consultative evaluation, Dr. Gelinas opined Quezada should "be limited to a **light** to **medium** level work capacity at most." Tr. 136. **Light work** involves lifting no more than **20 pounds** at a time with frequent lifting or carrying of objects weighing up to **10 pounds**. 20 C.F.R. § 416.967(b). If someone can do light work, [the agency] determines that he/she **can also do sedentary work**, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Id.* "[T]he full range of light work **requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday**. Social Security Ruling 83-10, 1983 WL 31251, *5-*6 (1983). Sitting may occur intermittently during the remaining time. *Id.*

Medium work involves lifting no more than **50 pounds** at a time with frequent lifting or carrying of objects weighing up to **25 pounds**. 20 C.F.R. § 416.967(c). If someone can do medium work, [the agency] determines that he/she **can also do sedentary and light work**. *Id.* A full range of medium work **requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday** in order to meet the requirements of frequent

11

lifting or carrying objects weighing up to 25 pounds.  Social Security Ruling 83-10, 1983 WL 31251, *6 (1983).

Comparing Dr. Toner's recommendations, occasional lifting of 30 pounds and frequent lifting of 25 pounds, with Dr. Gelinas' recommendation of occasional lifting of 50 pounds and frequent lifting of 25 pounds, the Court finds that, contrary to Quezada's contention, no "sharp contrast" exists between Dr. Toner's findings and conclusions and those of his treating physician.  In finding Quezada could perform light or medium work, Dr. Gelinas found Quezada was not limited in his standing/walking or sitting.  Accordingly, the Court will not strike Dr. Toner's consultative evaluation as it does not affect the ALJ's ultimate finding that Quezada was not disabled.

## C.  Medical-Vocational Guidelines (the grids)

As a general rule the grids should not be applied  conclusively "unless the claimant could perform the full range of work required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capabilities to perform most of the jobs in that range." *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir. 1993).  "[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain."  *Id.*  The grids may, however, be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base.  *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(holding that the ability to perform a "substantial majority" of work in RFC assessment suffices for purposes of the grids).  This is because only significant nonexertional impairments limit the claimant's ability to do the full range of work with a classification.  *See Thompson*, 987

F.2d at 1488. "The mere presence of a nonexertional impairment does not preclude reliance on the grids." *Id.*

Quezada contends the ALJ erred in conclusively applying the grids when he failed to consider his "pain-producing impairment." Pl.'s Mem. Br. at 7. Contrary to Quezada's contention, the ALJ considered his pain in making his RFC assessment and found:

> A determination must therefore be made whether the claimant retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. The term "residual functional capacity" is defined in the Regulations as the most an individual can still do despite the effects of physical and mental limitations that affect the ability to perform work-related tasks (20 C.F.R. §§ 404.1545 and 416.945 and Social Security Ruling 96-8p).
>
> In making this assessment, <u>all symptoms **including pain** must be considered</u> as well as the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p). Any medical evidence from acceptable medical sources reflecting judgments about the nature and severity of the impairment and resulting limitations must also be considered. (20 C.F.R. §§ 404.1527 and 416.927 and Social Security Ruling 96-2p and 96-6p).
>
> On July 24, 2002, Mr. Quezada told Dr. Toner that he was forced to quit his last significant job due to severe pain (Exhibit 4F, p.1). Mr. Quezada testified at the hearing that he stopped working at that employment when the company that owned the store made the decision to close the store and laid all the employees off. The Administrative Law Judge notes the discrepancy in the claimant's reports and the self-serving nature of his report to Dr. Toner. The claimant complained of worsening pain in his back through the chronology of the medical record. However, clinical imaging, including an x-ray study, a CT scan and multiple MRI scans <u>failed to reveal the severe degeneration in the claimant's back that would explain the severe, debilitating level of the claimant's subjective pain</u>. Further, clinical imaging reports consistently reveal "mild" degeneration of the claimant's lumbar spine at L4-L5 and L5-S1, without increasingly significant bulging or herniation that grew in size and severity over time.
>
> Mr. Quezada <u>complained of pain in his neck and shoulders</u> in his examination with Dr. Toner, yet the record documents no evidence of cervical or thoracic spine degeneration. Further, the claimant did not report pain on axial compression of his spine, even though he did make subjective complaints of pain with movement (Exhibit 4F, p.2).
>
> Overall, the claimant's <u>allegation of **debilitating pain** is not supported by objective findings and is therefore not wholly credible</u>. SSR 96-7p.

13

> To determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy based upon the definitions in the Dictionary of Occupational Titles published by the Department of Labor (20 C.F.R. § 404.1567).
>
> Accordingly, <u>giving the claimant the benefit of any doubt</u>, the Administrative Law Judge finds the claimant retains the residual functional capacity to perform all the exertional requirements of a full range of sedentary exertional level work activity.
>
> \* \* \* \* \* \* \* \* \* \*
>
> The evidence supports a finding that the claimant could perform the demands of the full range of sedentary work. Therefore, a finding of "not disabled" is directed by Medical-Vocational Guideline 201.25. This Guideline can be applied bindingly because the claimant's functional capacity **has no limitations below the full range of sedentary exertion**. The claimant's reported depression was never treated and was not diagnosed by a mental health professional.

Tr. 6-17. Under Finding No. 13, the ALJ also noted, "The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations." Tr. 19.

In giving Quezada the "benefit of the doubt," the ALJ considered the level of his pain and found it did not limit his ability to do the full range of sedentary work. Accordingly, the ALJ conclusively applied the grids and found Quezada was not disabled. *See Melton v. Sullivan*, 1991 WL 70715 (10th Cir. 1991)(unpublished opinion)(finding it was proper for ALJ to conclusively apply the grids where ALJ concluded that claimant's ability to perform the full range of jobs was not diminished by the pain caused by claimant's degenerative disc disease). In light of the evidence before the ALJ, the Court finds that substantial evidence supports these findings. Although the medical reports indicate the presence of some pain, the evidence is not so strong as to support Quezada's allegation of disability. Moreover, none of Quezada's treating physicians determined Quezada to be disabled either by virtue of his physical impairments or by disabling pain. Dr. Gelinas reviewed Quezada's MRI scan, noted it "show[ed] significant degenerative

14

narrowing with broad-based disc bulges and stenosis at 4-5 and 5-1, and found "his symptoms are severe enough to justify [a two-level fusion operation]." Tr. 136. Nonetheless, Dr. Gelinas, an orthopedic spine specialist and his treating physician, opined Quezada "should be limited to a light to medium level work capacity at most." *Id.* However, even though Dr. Gelinas opined that Quezada's "symptoms" did not preclude him from work at the light and medium exertional level, the ALJ opted to give Quezada the "benefit of the doubt" and found he retained the RFC to perform a full range of sedentary work.

Additionally, after the administrative hearing, Quezada submitted a letter from Dr. Woog dated September 10, 2003. Dr. Woog's letter was in response to Quezada's counsel's August 22, 2003 letter in which counsel requested information regarding Quezada. Tr. 186. Dr. Woog indicated he planned to "down regulate his back discomfort through medication management, physical therapy, and up to date diagnostic and therapeutic treatments." Tr. 186. Dr. Woog did not list any restrictions or limitations that would preclude Quezada from performing all work. Significantly, Dr. Woog described Quezada's pain as "back discomfort' and not as "unrelenting" or "excruciating," terms used by Quezada to describe his pain. Pl.'s Mem. Br. at 11; Pl.'s Reply Br. at 2. In addition, at the time of his first visit to Dr. Woog, Quezada reported he was taking Acetominophen for his pain.

Next, Quezada argues that, because the ALJ found his pain was severe at step two of the sequential evaluation process, he was precluded from concluding at step four that his pain was insignificant. Pl.'s Reply Br. at 2. In this case, the ALJ found "the claimant's impairments are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations 4 (Listings)." Tr. 16. Step

15

two requires only a "de minimis" showing; the mere presence of a condition or ailment documented in the record is not sufficient to prove that the plaintiff is significantly limited in the ability to do basic work activities. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). And as previously noted, "The mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson,* 987 F.2d at 1488. Accordingly, the Court finds that Quezada's argument is without merit.

Quezada also contends that "the fact that a doctor mentions an RFC level, such as light work, is not dispositive" because "[i]t is improper to assume that a doctor uses the term "light" in the same sense as the regulations define it, because the regulatory definition is a term of art." Pl.'s Reply Br. at 2-3. Quezada cites to *Allen v. Sullivan*, 977 F.2d 385, 390 (7th Cir. 1992) in support of his contentions. In *Allen*, the court rejected the Secretary's reliance on Allen's chiropractor's opinion that he was "limited to activities of daily living" and was "able to perform light working activities" to support the ALJ's RFC assessment that claimant had the capacity to perform the full range of light work. *Id.* at 388. In rejecting the Secretary's argument, the court found:

> The Secretary argues that two pieces of substantial evidence support the ALJ's decision. First, the Secretary argues that the ALJ correctly relied on Dr. Janse's conclusion that Allen was "limited to light working activities." But we do not think Dr. Janse's use of that term is equivalent to the Secretary's term of art, "light work." In fact, **the form Dr. Janse filled out was prepared by the Illinois Department of Public Aid and involved an entirely different scheme of categories**. Moreover, **given the other statements in Dr. Janse's report about Allen's limited capacity to walk, sit and stand, we do not think that a fair reading of the whole report can support a finding that Allen can perform the full range of light work**.

*Id.* at 390. *Allen* is distinguishable from this case. Dr. Gelinas is an orthopedic spine surgeon and Dr. Santos is a physiatrist that specializes in problems of the spine. Dr. Gelinas was privy to Dr.

16

Santos' evaluation and opined Quezada "should be limited to a light to medium level work capacity at most."  Tr. 136.  Unlike Dr. Janse, Dr. Gelinas did not complete a form involving "an entirely different scheme of categories" from those used by the agency.  Dr. Gelinas was clear in his recommendation that Quezada "be limited to a **light to medium level work capacity** at most."  There is no evidence to support Quezada's argument that Dr. Gelinas, an orthopedic spine specialist, used that language in any way other than to refer to Quezada's RFC.

Finally, Quezada argues "the ALJ relied on irrelevant portions of the record to find [his] pain was not credible." Pl.'s Mem. Br. at 11.  The Court recognizes that the ALJ's determination of credibility is a factor to be considered in determining whether his decision is supported by substantial evidence.  *Nieto v. Heckler*, 750 F.2d 59, 62 (10th Cir. 1984).

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.  *Id.*  The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility.  *Id.*

In evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's

credibility, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The inability to work pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

In this case, the ALJ noted discrepancies in Quezada's testimony, reviewed the medical evidence and found it did not support Quezada's allegations of "severe, debilitating level of . . . pain, noted Quezada reported pain in his neck and shoulders during his examination by Dr. Toner "yet the record document[ed] no evidence of cervical or thoracic spine degeneration, and noted Quezada "did not report pain on axial compression of his spine, even though he did make subjective complaints of pain with movement." Tr. 17. The ALJ set forth the specific evidence he relied on to determine Quezada's credibility. Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence and will not be disturbed.

**D.  Conclusion**

It is not the Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).  The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  After such review, the Court is satisfied that there is substantial evidence on the record as a whole to support the ALJ's determination that Quezada's pain was not sufficiently disabling to preclude the use of the grids.  Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**